**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BRADLEY CLYDE FUDGE,

      Plaintiff,

vs.                                                                                                  No. CIV 20-0674 JB/CG

E. CRUZ MARTINEZ; DANIEL PETERS;
ESTEVAN FLORES; BAYOLA LUNA;
TINA M. PEREZ; L. HERNANDEZ;
ISSAC JACOBO and STEVE MADRID,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court, under 28 U.S.C. § 1915 and rule 12(b)(6) of the Federal Rules of Civil Procedure, on: (i) the Plaintiff's Motion for Service of Summons on Defendants, filed July 23, 2020 (Doc. 7)("Motion for Service"); and (ii) the Plaintiff's Motion for Service of Summons on Defendants, filed September 28, 2020 (Doc. 9)("Second Motion for Service"). Plaintiff Bradley Clyde Fudge appears pro se. Because Fudge states 42 U.S.C. § 1983 claims for which relief can be granted, the Court will: (i) grant the Motion for Service; and (ii) grant the Second Motion for Service.[1]

**PROCEDURAL BACKGROUND**

Fudge filed a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, filed July 9, 2020 (Doc. 4)("Complaint"), alleging civil rights violations arising during the re-adjudication of his misdemeanor sentence and subsequent incarceration in state prison. Chief United States

---

[1]The Motion for Service and the Second Motion for Service appear identical. In the Second Motion for Service, Fudge writes that "I have not received any other information other than the certified return receipt." Second Motion for Service at 4. The Court assumes that Fudge sent the same motion twice to ensure that the Court saw the motion.

Magistrate Judge of the United States District Court of the District of New Mexico, the Honorable Judge Carmen E. Garza notified Fudge, sua sponte, that the Complaint fails to state a claim upon which relief can be granted and granted Fudge leave to file an amended complaint.  See Fudge v. Brown, No. CIV 20-674 CG, 2020 WL 4015774, at *1 (D.N.M. July 16, 2020)(Garza, M.J.)("MOO").  Fudge subsequently filed his Amended Complaint.  See Plaintiff's Amended Civil Rights Complaint pursuant to 42 U.S.C. § 1983 at 1, filed July 23, 2020 (Doc. 6)("Amended Complaint").

In the Amended Complaint, Fudge alleges that he was denied "due process," as well as "Liberty and Property as a civil right under the protection of the Fifth, and Fourteenth Amendment to the United States Constitution."  Amended Complaint ¶ B(1), at 4.  Fudge also contends that the Defendants "violat[ed]" his "Eighth Amendment civil right against excessive or cruel or unusual punishment."  Amended Complaint ¶ B(1), at 4.  Fudge insists that the Defendants received notice "of the cause of action, showed deliberate indifference, and inhibited the plaintiff's attempts at remedying the cause."  Amended Complaint ¶ B(8), at 4.  Fudge elaborates on the alleged constitutional violations:

> Until February 2019 -- Plaintiff endured forced incarceration in state prison . . . receiving occasional beatings from inmates . . . Only after lengthily investigating procedures for a Writ of Habeas Corpus, and filing many informal grievances, escalating said grievances, appealing grievances, notifying Mental Health providers, medical providers, Correction Officers, the Classifications Board, Unit Manager, Case managers (multiple), Warden, and Deputy Warden, finally the State of New Mexico County of Sierra Seventh Judicial District Court ordered the release of the Plaintiff (No. D-721-CV-2019-00020,) due to an "Illegal Sentence."  Access to legal materials was extremely limited, access to a paralegal was inconsistent at best, at times it was impossible to obtain a Notary Public, out-going legal mail was returned to Plaintiff for unjustifiable reasons, living conditions were not sanitary, heat was not on for extended periods, flooded floors were routine (Sewage, or broken plumbing), toilets and showers were regularly non-functional, Unit Manager and Correction Officers regularly berated inmates, prescribed medications were denied, eye glasses were stalled for months, requests for dentures were ignored for months.

Amended Complaint ¶ C(1)(A).  With respect to medication denial, Fudge avers that he "had been prescribed morphine for chronic pain, Plaintiff's medications were denied, and Plaintiff endured six months of withdrawal symptoms," because he "had been on morphine for approximately 14 years . . . ."  Amended Complaint ¶ F(1)(d), at 15-16.

Next, Fudge identifies each Defendant and describes his interaction with the Defendants. See Amended Complaint ¶ b, at 6.  Defendant E. Cruz-Martinez is a "Unit Manager" at Southern New Mexico Correctional Facility ("Southern NM").  Amended Complaint ¶ b, at 6.  Fudge alleges that he had some questions "about a Habeas Corpus" and that Cruz-Martinez did not give Fudge any helpful information, "no recommendations, only screaming at me, blaming my ignorance completely on me."  Amended Complaint ¶ b, at 7.  When Fudge "brought evidence of [his] being illegally sentenced, and held," Cruz-Martinez "brushed aside any evidence presented, and told me to speak with my case manager," who "has no power to correct anything."  Amended Complaint ¶ b, at 7.  Fudge also alleges that Cruz-Martinez "screamed at me on several occasions," and that another Southern NM employee, William Crisp, stated that when Cruz-Martinez was speaking "about a person falsely imprisoned," Cruz-Martinez said "F**k him, let him hire an expensive lawyer."  Amended Complaint ¶ c-d, at 7-8.  Fudge alleges that Crisp told him that "he watched while [Fudge's] complaints and grievances were 'lost' by throwing them away."  Amended Complaint ¶ D(1)(d).  Cruz-Martinez also allegedly stated "I know about it, we've done all we are going to do" after hearing that Fudge was "being held on a misdemeanor," and stated "yeah" after an employee said that a website showed Fudge "was in county jail, not prison."  Amended Complaint ¶ e-g, at 8.  After Fudge told Cruz-Martinez that he "thought the mail-room had lost [his] Power of Attorney," Cruz-Martinez "said to see my case manager, I explained that he was

not in and would not be in that day, what should I do? She said 'SUE THE STATE.'" Amended Complaint ¶ g, at 8.

Fudge alleges that he wrote a letter to Daniel Peters, a "warden" at Southern NM, regarding Fudge "being held on a misdemeanor" and Cruz-Martinez' actions. Amended Complaint ¶ 2(b), at 9. The letter "was returned" to Fudge "saying I may speak to him during his regular rounds." Amended Complaint ¶ 2(b), at 9. When Fudge spoke to Peters about Cruz-Martinez, Peters instructed Fudge to "write a grievance." Amended Complaint ¶ 2(c), at 9. After Fudge "explained to him that she was the person that received those grievances, and that I already take abuse from her, that would only make it worse," Peters "said that it would make it's [sic] way to Santa Fe." Amended Complaint ¶ 2(c), at 9.

Defendant Estevan Flores is a "Deputy Warden" at Southern NM. Amended Complaint at ¶ 3, at 9. Fudge alleges that, when he was summoned to Flores' office to receive legal mail, Flores "shoved [a paper] in front of me that stated I had properly received my mail, and in a commanding voice, told [me] to 'SIGN HERE.'" Amended Complaint ¶ 3(b), at 9-10. Fudge also alleges that: (i) when he complained about a delay in getting paid, Flores "responded by yelling 'YOU WANT PAID OR NOT!';" (ii) a letter Fudge wrote to Flores "was returned" to Fudge without a reply; and (iii) when Fudge filled out "debit memos" for each habeas corpus envelope, Flores said: "This is a prison, not Disney Land." Amended Complaint ¶ 3(c)-(g), at 10. Fudge also alleges that, when he received his legal mail from Flores, it "had been opened, and presumably read." Amended Complaint ¶ 3(b), at 9-10. Finally, Fudge notes that his petition for Habeas Corpus was "returned, unmailed . . ." by Flores. Amended Complaint ¶ 3(f), at 10

Fudge does not know Defendant Bayola Luna's position at Southern NM. Amended Complaint ¶ 4, at 11. Fudge alleges that, when he "ask[ed] for copies of 'Verification of Habeas

Corpus', before Jacobo could answer, Luna interjected 'It is against prison policy.'" Amended Complaint ¶ 4(b), at 11.  Fudge also alleges that, when he "asked again, Luna insisted that I not be allowed to have copies made, as 'It is against prison policy'." Amended Complaint ¶ 4(b), at 11.

Defendant Tina M. Perez is a "Case Manager/Classification Officer" at Southern NM. Amended Complaint ¶ 5, at 11.  Fudge alleges that Perez "accused [Fudge] of complaining about" Perez.  Amended Complaint ¶ 5(b), at 11.  On the day that Fudge was to be released, about 10:00 a.m., Fudge "was run around, and stalled until a few minutes before 6:00 PM."  Amended Complaint ¶ 5(c), at 11.  When Fudge "was complaining about still being held, Perez then stated very loudly that they could and possibly would hold me until midnight."  Amended Complaint ¶ 5(c), at 11-12.

Defendant L. Hernandez is a "Case Manager" at Southern NM.  Amended Complaint ¶ 6 at 12.  Fudge alleges that Hernandez "confronted" Fudge and accused Fudge of complaining about Hernandez.  Amended Complaint ¶ 6(b) at 12.  Fudge also alleges that Hernandez summoned Fudge from his pod, was walking Fudge to the release area, and told Fudge he "had to walk on the right side [of the passageway], or he would 'write me up,' and I would have to stay."  Amended Complaint ¶ 6(c), at 12.

Defendant Isaac Jacobo is a "Case Manager" at Southern NM.  Amended Complaint ¶ 7, at 13.  One morning, Fudge went to Jacobo to get a document notarized and Jacobo said: "Come back after lunch."  Amended Complaint ¶ 7(b), at 13.  Fudge returned after lunch, but the notary did not show up until a couple days later.  Amended Complaint ¶ 7(b), at 13.  Fudge also alleges that Jacobo "'lost' my originals of an informal grievance" and "denied me copies of 'Verification of Habeas Corpus', as against prison policy."  Amended Complaint ¶ 7(c)-(d), at 13.

Defendant Steve Madrid is the "Statewide Disp./Griev. Appeals Manager."  Amended

Complaint ¶ 8, at 14.  After the "local classifications appeal officer" denied Fudge's "Inmate Classification Appeal," Fudge sent an appeal to Madrid, who "stated that it must be handled at facility level."  Amended Complaint ¶ 8(b), at 14.

Fudge filed a Motion for Service when he filed his Amended Complaint.  See Motion for Service at 1.  Fudge filed his Second Motion for Service two months later.  See Second Motion for Service at 1.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes his or her pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[I]f the Court can reasonably read the pleadings to state a valid claim on which [the petitioner] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Hall v. Bellmon, 935 F.2d at 1110.  The Court will not, however, "assume the role of advocate for the pro se litigant."  Hall v. Bellmon, 935 F.2d at 1110.  "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."  Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

## LAW REGARDING SUA SPONTE DISMISSAL UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)("Twombly").  A court should not dismiss a pro se complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Fed. R. Civ. P. 12(b)(6).  While dismissal under rule 12(b)(6) generally follows a motion to dismiss, a court's sua sponte dismissal of a complaint under rule 12(b)(6) is not an error if it is "'"patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'"  Curley v. Perry, 246 F.3d at 1282 (quoting Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991)).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution of the United States of America or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 'did not create any substantive rights, but merely enforce[s] existing constitutional and federal statutory rights . . . .'" (second alteration added by Nelson v. Geringer)(quoting Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1197 (10th Cir. 1998))).  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.

To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). The Court has noted:

- 7 -

> [A] plaintiff "must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F.Supp.2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(second alteration in original)(quoting Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. March 30, 2010)(Browning, J.)).

The Supreme Court of the United States of America clarified that, in alleging a § 1983 action against a government agent in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Consequently, there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens[2] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Entities cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 689 (1978). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

---

[2]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), the Supreme Court held that a violation of the Fourth Amendment of the Constitution "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389. Thus, in a Bivens action, a plaintiff may seek damages when a federal officer acting in the color of federal authority violates the plaintiff's constitutional rights. See Bivens, 403 U.S. at 389. See also Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog" to § 1983 actions).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199 (quoting 42 U.S.C. § 1983).  The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200. It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."  Dodds v.

Richardson, 614 F.3d at 1200.  More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'"  Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

To illustrate this principle, the Tenth Circuit relied upon Rizzo v. Goode, where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).  The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "'crush the nascent labor organizations.'"  Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## ANALYSIS

Having carefully reviewed the Amended Complaint, and the relevant law, the Court will: (i) grant the Motion for Service; and (ii) grant the Second Motion for Service.  The Amended Complaint states successfully a claim for relief under 42 U.S.C. § 1983.  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color state law that result in a deprivation of rights that the Constitution secures.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Under rule 12(b)(6), the court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not

consider matters outside the pleading.  See Twombly, 550 U.S. at 555; Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989).

Here, Fudge alleges possible violations of the Fifth, Fourteenth, and Eighth Amendments of the Constitution of the United States of America.  See Amended Complaint ¶ B(1), at 4.  Moreover, he contends that the Defendants "knew or should have known" about the violations of his constitutional rights, but "showed deliberate indifference, and inhibited the plaintiff's attempts at remedying the cause."  Amended Complaint ¶ B(2), at 4; id. ¶ B(8), at 4.  See Farmer v. Brennan, 511 U.S. 825, 828 (1994)("A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").  The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d at 1255; Trask v. Franco, 446 F.3d at 1046.  Because Fudge has indicated that the Defendants here knew or should have known about the constitutional violations against him, he has plausibly alleged that they may be subject to § 1983 liability.  See Martinez v. Carson, 697 F.3d at 1255-56; Amended Complaint ¶ B(2), at 4.

The Court concludes that Fudge has alleged sufficient facts to demonstrate that the Defendants have violated the Eighth Amendment, because he alleges that prison conditions were very unsanitary and that the Defendants denied him proper medical care.  See Amended Complaint ¶ C(1)(A), at 5.  In a recent case, the Supreme Court held that prison officials violated the Eighth Amendment's prohibition on cruel and unusual punishment where the officials confined the inmate in "deplorably unsanitary" conditions for six days -- the inmate's cell had sewage on the floor, was "frigidly cold," and had an overflowing drain.  Taylor v. Riojas, No. 19-1261, 2020 WL 6385693,

at *1 (U.S. Nov. 2, 2020). Similarly, Fudge alleges that "living conditions were not sanitary, heat was not on for extended periods, flooded floors were routine (Sewage, or broken plumbing), toilets and showers were regularly not functional . . . ." Amended Complaint ¶ C(1)(A), at 5. Fudge also asserts that the Defendants "denied [him] . . . prescribed medications," Amended Complaint ¶ C(1)(A), at 5, which caused him to "endure[] six months of withdrawal symptoms," Amended Complaint ¶ F(1)(d) at 14. He contends that his "chronic medical issues . . . were ignored," Amended Complaint ¶ F(1)(d) at 14, his "eye-glasses were stalled for months," and his "requests for dentures were ignored for months." Amended Complaint ¶ C(1)(A), at 5. The Eighth Amendment "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." See Estelle v. Gamble, 429 U.S. 97, 103 (1976). Accordingly, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. at 103. Because Fudge alleges that the Defendants have "intentionally den[ied] or delay[ed] access to medical care," Estelle v. Gamble, 429 U.S. at 104-05, and kept him in "deplorably unsanitary" conditions, Taylor v. Riojas, 2020 WL 6385693, at *1, the Court concludes that Fudge has stated a cognizable § 1983 claim under the Eighth Amendment, see Amended Complaint ¶ C(1)(A), at 5; id. ¶ F(1)(d) at 14.

Similarly, Fudge has asserted facts supporting a First Amendment claim under § 1983, because he alleges that prison officials refused to send his legal mail, see Amended Complaint ¶ C(1)(A), at 5, and that Flores opened his legal mail while he was not present, see Amended Complaint ¶ D(3)(b), at 9-10. "A claim that a prisoner's mail is being tampered with raises concerns about the prisoner's access to the courts and the prisoner's First Amendment rights . . . to send and receive mail." Walters v. Eddy Cty. Det. Facility, No. CV 10-1070 WJ/CEG, 2011 WL 13284757, at *2-3 (D.N.M. July 14, 2011)(Garza, J.). See Wolff v. McDonnell, 418 U.S. 539,

574-77 (1974)(explaining that prisoners have the right to be present when their legal mail is opened).  Here, Fudge has stated successfully a § 1983 claim, because he alleges that Flores was involved personally in opening his mail.  See Wolff v. McDonnell, 418 U.S.at 574; Walters v. Eddy Cty. Det. Facility, 2011 WL 13284757, at *3 ("To successfully assert a § 1983 claim against the named Defendants, [the plaintiff] must allege that they had some personal involvement in opening the legal mail."); Amended Complaint ¶ D(3)(b), at 9-10.  Moreover, prisoners have a right to send outgoing legal mail.  See Wolff v. McDonnell, 418 U.S. at 574; Lanza v. New York, 370 U.S. 138, 143-44 (1962); Brown v. Saline Cty. Jail, 303 F. App'x 678, 683 (10th Cir. 2008)(concluding that a prisoner's allegations that a jail "was not processing his mail is sufficient to state a claim for relief").  Accordingly, because Fudge alleges that prison officials refused to send his outgoing legal mail, see Amended Complaint ¶ C(1)(A), at 5, and opened his legal mail while he was not present, the Court concludes that Fudge has stated a cognizable claim that prison officials violated his First Amendment rights, see Amended Complaint ¶ D(3)(b), at 9-10.

**IT IS ORDERED** that: (i) the Motion for Service, filed July 23, 2020 (Doc. 7), is granted; and (ii) the Second Motion for Service, filed September 28, 2020 (Doc. 9), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Parties*:

Bradley Clyde Fudge
Williamsburg, New Mexico

    *Plaintiff pro se*